[Cite as *In re D.F.*, 2012-Ohio-3063.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY

**IN THE MATTER OF:**

    **D.F.,**                                   **CASE NO. 16-11-14**

**ADJUDICATED NEGLECTED AND
DEPENDENT CHILD.**                   **O P I N I O N**

**[DARRELL D. FRANCIS - APPELLANT].**

---

**IN THE MATTER OF:**

    **H. F.,**                                 **CASE NO. 16-11-15**

**ADJUDICATED NEGLECTED AND
DEPENDENT CHILD.**                   **O P I N I O N**

**[DARRELL D. FRANCIS - APPELLANT].**

---

**IN THE MATTER OF:**

    **S. F.,**                                 **CASE NO. 16-11-16**

**ADJUDICATED NEGLECTED AND
DEPENDENT CHILD.**                   **O P I N I O N**

**[DARRELL D. FRANCIS - APPELLANT].**

Case Nos. 16-11-14, 16-11-15, 16-11-16

**Appeals from Wyandot County Common Pleas Court**
**Juvenile Division**

**Trial Court Nos. C 2102014, C2102015, C2102016**

**Judgments Affirmed**

**Date of Decision:   July 2, 2012**

**APPEARANCES:**

*Kelle M. Saull*  **for Appellant**

*Douglas D. Rowland*  **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Father-appellant Darrell Francis ("Francis") files this appeal from the judgment of the Court of Common Pleas of Wyandot County, Juvenile Division granting permanent custody of his children to the Wyandot County Department of Job and Family Services ("the Agency").  For the reasons set forth below, the judgment is affirmed.

{¶2} On September 7, 2010, the Agency filed a complaint alleging that D.F., J.F. and S.F. were neglected and dependent based upon a domestic violence incident and the condition of the home.  Francis had custody of the children at the

time, though the mother did not reside with them.[1]  The trial court granted temporary custody to the Agency on September 9, 2010.  An adjudicatory hearing was held and on October 4, 2010, the trial court found the children to be dependent, a finding with which Francis agreed.  The claim of neglect was dismissed by the Agency.[2]  The disposition hearing was held on November 1, 2010.  The children were placed in the temporary custody of the Agency and Francis was ordered to comply with the case plan.

{¶3} On May 25, 2011, the Agency filed a motion for permanent custody alleging that the children were abandoned and that it was in their best interest for the Agency to take permanent custody.  A hearing was held on the motion on October 24, 2011.  The children's mother surrendered her parental rights, but Francis did not.  On November 16, 2011, the trial court granted the Agency's motion and terminated the parental rights of Francis.  Francis appeals from this judgment and raises the following assignment of error.

> **The trial court erred when finding it was in the best interest of the minor children to grant [the Agency] permanent custody because said finding was contrary to law and against the manifest weight of the evidence.**

---

[1] Francis and the mother were never married and no longer had a relationship.

[2] The complaint had two counts:  Count 1 was neglect, Count 2 was dependency.  The trial court dismissed Count 1 as to Francis and found the children dependent.  The children were found to be neglected and dependent as to the mother.

{¶4} The sole assignment of error is that the trial court's judgment was not in the best interest of the children. The termination of parental rights is governed by R.C. 2151.414.

> **(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:**
>
> **\* \* \***
>
> **(b) The child is abandoned.**
>
> **\* \* \***
>
> **(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:**
>
> **(a)  The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;**
>
> **(b)  The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;**
>
> **(c)  The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or**

**more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;**

**(d)  The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;**

**(e)  Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.**

**For the purposes of division (D)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.**

**\* \* \***

**(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:**

**(1)  Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be**

**placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.**

\* \* \*

**(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;**

\* \* \*

**(10) The parent has abandoned the child.**

\* \* \*

**(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.**

**(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.**

\* \* \*

**(16) Any other factor the court considers relevant.**

In this case, the trial court found that Francis had abandoned his child. "[A] child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether

-6-

the parents resume contact with the child after that period of ninety days." R.C. 2151.011(C).

{¶5} A review of the record shows that Francis had no contact with his children from December 16, 2010, until the filing of the motion for permanent custody on May 25, 2011. This is 160 days without contact, which exceeds the ninety days required for a legal finding of abandonment. Francis admits that his behavior met the legal definition of abandonment. Instead, he argues that the termination of the parental rights was not in the children's best interests. Having found that the children were legally abandoned, the court then needed to address whether it was in the best interests of the children to terminate Francis' parental rights. In reaching its determination, the trial court made the following findings.

> **The children have been abandoned by their parents as defined in Section2151.011(C). Father has not visited with his children for more than 90 days and mother has admitted to that same allegation. Evidence also shows neither parent has completed their case plan goals. Those goals were put in place to allow the children to return to one or both parents and have some stability and parental confidence. Neither parent has communicated with the Department to check on their children's welfare again for substantial periods of time. None of the children can be placed with either parent within a reasonable amount of time nor should they be returned. Mother and father have had multiple residences showing a lack of stability. Father said he could care for the children now but says that while being shackled and currently incarcerated. Father has lived in a shelter as well as jail. Neither parent has displayed the competence these children need.**

> **The Court has no confidence these children could be returned within a reasonable time, given the evidence today and the history of both parents; their lack of communication and contact with their children; lack of stable housing; and legal problems.**
>
> **The Court finds the children interact well with each other. There was no evidence showing how the children interacted with either parent within numerous months. The children deserve a safe, legal and secure home with consistency and love from their caregivers. The children are doing well now and thriving although their past problems had to be addressed because of not being addressed when they were with their parents, i.e. delays in development, unimaginable dental problems and the pain that must have come with that to a child who needed a root canal in every tooth in his mouth, and the suffering that must have caused.**

Nov. 16, 2011 Entry, 5.

{¶6} Francis testified that he had stabilized his life and had a place to live. However, he was in Franklin County Jail for a community control violation at the time of the hearing. Tr. 9. He was on community control for a theft charge which occurred earlier in 2011. Tr. 9. His housing was with his new girlfriend that he had been seeing for almost four months and he had resided there for approximately five weeks prior to reporting to jail. Tr. 9-10. Before he moved in with his girlfriend, Francis was living in a homeless shelter in Ohio. Tr. 11. Francis has no employment as he is "totally disabled" and receives approximately $620 a month in income. Tr. 13-14. He admitted that he had had no contact with his children since December 16, 2010, even after he received the motion for permanent custody. Tr. 14. The case plan required Francis to receive a substance

abuse assessment, which he did not do. Tr. 18. Francis admitted that he left Wyandot County because there were outstanding arrest warrants for him in Wyandot County. Tr. 21. Since July of 2010, Francis had been incarcerated four different times. Tr. 23.

{¶7} The case worker for the children was April Allison ("Allison") Allison testified that the case plan required Francis to seek mental health, substance abuse, and domestic violence counseling. Tr. 27. He was also to be assessed for other needed services upon release from jail. Tr. 27. Francis was required to comply with all the recommendations of the service providers and to establish a safe, stable living environment for the children. Tr. 28. Finally, Francis was required to complete parent education. Tr. 28. Allison testified that Francis had not met any of these goals. Tr. 28. She admitted that at the beginning of the case, Francis was cooperative and a good father. Tr. 37. Francis had completed some of the parenting classes, but was still a couple classes shy of completing the goal. Tr. 38. She also admitted that Francis had completed a mental health assessment, but never followed through with the recommendations. Tr. 38. The assessment recommended individual counseling, which Francis did not attend. Tr. 40. Of the twelve scheduled visits prior to Francis leaving Wyandot County, he attended nine. Tr. 42. Allison also testified that Francis had prevented them from aiding him by moving from the area without telling them

where he was going and without continuing contact with the Agency. Tr. 47. At no time did Francis contact the Agency and ask for his new home to be evaluated. Tr. 54. Allison had no contact of any kind with Francis since December 16, 2010. Tr. 56

{¶8} Given the testimony in this case, the trial court could reasonably determine by clear and convincing evidence that the Agency had proven that Francis had not completed or even made substantial progress on the case plan. R.C. 2151.414(E)(1). At the time of the hearing, Francis had not communicated with the children for 324 days, which shows a lack of commitment and communication with the children. Francis also had not contacted the Agency to even inquire about the children in that time. R.C. 2151.414(E)(4). By failing to contact the children, Francis had abandoned the children. R.C. 2151.414(E)(10). Since these factors can be found, the trial court correctly determined that the children could not be placed with Francis within a reasonable time. The trial court also considered the factors set forth in R.C. 2151.414(D) to determine the best interests of the children. The trial court considered the relationship among the children, the parents, and the foster parents. It considered Francis' history of incarceration and his lack of communication with the children. The Guardian Ad Litem testified that although Francis appears to love his children, it would be in the best interest of the children if his parental rights were terminated. Given all of

the evidence, the trial court did not err in finding that a termination of Francis' parental rights was in the best interest of the children. The assignment of error is overruled.

{¶9} The judgments of the Court of Common Pleas of Wyandot County, Juvenile Division are affirmed.

***Judgments Affirmed***

**PRESTON and ROGERS, J.J., concur.**

**/jlr**